Macdonald, D. Lloyd, J.
The plaintiff here is the Joint Venture of Domenech, Hicks and Krockmalnic and Hezekiah Pratt Associates, Inc. (“Plaintiff’). Before the Court is the Plaintiffs Application for an Order Vacating the Arbitration Award pursuant to G.L.c. 251, §§12(3) and 12(5). The essence of the Plaintiffs claim is that the defendant Massachusetts Housing Finance Agency (“MHFA”) is not the real party in interest to the agreement underlying the dispute as required by Mass.R.Civ.P. 17(a). The MHFA opposes the application and has moved under G.L.c. 231, §6F for fees and costs incurred in doing so. The MHFA alleges that the application is insubstantial and frivolous. The Court DENIES the Plaintiffs application and ALLOWS MHFA’s cross-application and its 231, §6F request.
Background
The Plaintiff is a joint venture entity comprised of two architectural firms. The dispute arises from an agreement (the “Agreement”) between the Plaintiff and the MHFA in its capacity as Interim Asset Manager for the United States Department of Housing and Urban Development (“HUD”). The Agreement is one for architectural and related services in connection with the construction of an affordable housing project in Boston known as Camfield Gardens (the “Project”). The Agreement contained the following arbitration clause:
Claims, disputes, or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.
After what appears to have been substantial completion of the Project, the MHFA complained of the quality of the Plaintiffs services. The parties initially executed a tolling agreement and attempted to settle the dispute. However, in November 2003 the MHFA filed a Demand for Arbitration pursuant to the Agreement’s arbitration clause. The Demand asserted claims for breach of contract, breach of implied and express warranties and negligence in connection with the design and contract administration of the Project.
The Plaintiff responded with its Answering Statement and Counterclaim. The Plaintiffs response did not include any objection to the MHFA’s standing to bring the claim as a real party in interest to the arbitration agreement.
Apparently at a glacial pace, the arbitration proceeding thereafter moved forward, and it wasn’t until March 2008 that a pre-hearing conference was held. The Plaintiff made no objection to the MHFA’s real party in interest standing at that time, either.
The arbitration hearings began on May 28, 2008 and continued for eleven separate days through August 4, 2008. The details are not important, but the MHFA’s claims were comprised of what the parties generically referred to as the “Round I” and “Round II” claims.
On the first day of testimony on May 29, 2008, the Plaintiff filed a Motion to Dismiss or Preclude Evidence of MHFA’s so-called “Round II” claims. The motion was predicated in part on a challenge to the MHFA’s standing on account of the MHFA having allegedly assigned its interests implicated by the Round II claims to the Camfield Tenants Association. The arbitrator denied the Plaintiffs motion.
*397 Approximately a month later, the Plaintiff filed a Motion for a Directed Award claiming for the first time as to the Round I claims that the real party in interest was HUD and that because HUD was not a party to the Agreement the MHFA could not compel the Plaintiff to arbitrate claims that properly belonged to HUD. In July, the Arbitrator heard arguments on the motions. By letter dated July 23, 2008, the Arbitrator denied the Plaintiffs motion.
On November 19, 2008, the Arbitrator issued the award. The Arbitrator awarded MHFA all of the damages it sought with respect to the Round I claims ($603,887) but denied any damages to the MHFA on the Round II claims. The Arbitrator also denied the Plaintiffs counterclaim. The arbitrator further denied MHFA’s request for attorneys fees or prejudgment interest.
Legal Standards
A. Scope of Review
“The role of courts in reviewing an arbitrator’s award is limited.” Concerned Minority Educators of Worcester v. School Comm. of Worcester, 392 Mass. 184, 187 (1984). A court is “strictly bound by an arbitrator’s findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing.” City of Lynn v. Thompson, 435 Mass. 54, 61 (2001). Courts are not permitted to review errors of law or fact or overrule an arbitrator based on a different interpretation of a contract. See Concerned Minority Educators of Worcester, 392 Mass. at 187-88. Absent fraud, a court’s review is limited to whether the arbitrator exceeded the scope of reference or awarded relief in excess of his authority. School Committee of Waltham v. Waltham Educators Ass'n, 398 Mass. 703, 705-06 (1986).
Further, under both Massachusetts and federal law, an arbitrator may properly decide issues that are procedural in nature. Mass. Highway Dep’t v. Perini Corp., 444 Mass. 366, 377 (2005), quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 (2002) (procedural questions include “time limits, notice, la-ches, estoppel, and other conditions precedent to an obligation to arbitrate” [emphasis omitted]). Indeed, “(o]nce it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, ‘procedural’ questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator”). Bedford v. AFSCME, 69 Mass.App.Ct. 110, 112 (2007), quoting John Wiley & Sons v. Livingston, 376 U.S. 543, 557 (1964). Moreover, “(o]nly those contracts with arbitration clauses that expressly preclude arbitrators from deciding . . . procedural disputes will support judicial intervention”). Mass. Highway Dep’t, 444 Mass. at 376, n.11.
The limited scope of review reflects the Commonwealth’s longstanding strong public policy favoring arbitration. Superadio Ltd. Partnership v. Winstar Radio Prods., LLC, 446 Mass. 330, 333 (2006).
B. G.L.c. 251, §12(3) and §12(5)
General Laws chapter 251 §12(3) and §12(5) provides that “[u]pon application of a party, the court shall vacate an award if . . . (3) the arbitrators exceeded their powers . . . [or] (5) there was no arbitration agreement and the issue was not adversely determined in proceedings under section two and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.” G.L.c. 251, §12(3) and (5). The court will uphold an arbitrator’s award even where the performance of the contract which contained the arbitration clause is deemed illegal. See Lawrence v. Falzarano, 380 Mass. 18, 21 (1980) (holding that although contract did not comply with statutoiy requirement that certificate of need be obtained or other statutoiy requirement for creating contract with city, contract which contained arbitration clause nonetheless binding).
Discussion
A. Necessaiy Parly
In substance, the Plaintiffs claim rests on a Rule 17 issue: Is the MHFA the “real party in interest” for purposes of standing to bring the claim or is there a necessaiy party missing? As noted above, under Massachusetts and federal precedent “procedural” issues are properly within an arbitrator’s purview. The leading treatise on the Massachusetts rules states without qualification: “Rule 17(a) is purely procedural.” James W. Smith and Hiller B. Zobel, Rules Practice §17.2 (2d ed. 2007). Thus, it is an issue appropriate to the arbitrator’s conclusive decision.
However, even if the Court were to examine the matter independently, the arbitrator’s decision would be affirmed.
Most fundamental for these purposes is the text of the Agreement’s arbitration clause itself: “Claims, disputes, or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration.” Whether the MHFA is the “real parly in interest” is surely a “dispute,” and it “arisfes] out of or relat[es] to this Agreement.” Therefore, it “shall be subject to and decided by arbitration.” The arbitrator thus had the authority by virtue of the Agreement itself to decide the issue.
Further, Rule 17’s text provides, “[A] parly with whom or in whose name a contract has been made for the benefit of another . . . may sue in his own name without joining with him the party for whose benefit the action is brought.”
The Plaintiff stated it was unaware of the essence of the HUD connection to the Project until 2008, almost five years after the initiation of the arbitration. However, HUD’s relationship to the Project was prom *398 inently woven into the text of the Agreement. For example, Section 2.2.8 provides: “In accordance with the terms of the Owner’s primary agreement with the U.S. Department of Housing and Urban Development (HUD) dated April 11, 1995, as amended, the Design Documents, Construction Budget and Total Hard Cost shall be further subject to approval by HUD.” Section 2.4.1.2 provides: “A . . . set of progress prints shall also be provided, as a basic service, to Owner at 75% completion for transmittal to HUD. Section 10.7 provides: ’’Applications for payment shall be submitted to Owner for payment by the U.S. Department of Housing and Urban Development (HUD) Multi-family Properly Management System (PMS)." And Section 8.8 provides: ‘This Agreement may ... be terminated by the Owner in the event of a partial termination or a loss or reduction in funding under the Owner’s primary agreement with [HUD].”
It is not credible that the Plaintiff was unmindful of HUD’s relationship to the Project. And even if it was, Rule 17 permits, as quoted above, that the MHFA could bring the claim “for the benefit of another,” namely in this instance, HUD.[1]
The arbitrator did not exceed the scope of reference or award relief in excess of his authority.[2]
Sanctions
G.L.c. 231, §6F para. 1 permits legal fees and related expenses to be awarded where the Court finds “that all or substantially all of the claims, defenses, setoffs or counterclaims, whether of a factual, legal or mixed nature,... were wholly insubstantial, frivolous and not advanced in good faith.” The Court finds that the Plaintiffs application was “wholly insubstantial” and was directly contrary to the Commonwealth’s strong public policy favoring arbitration. The expenses generated by the Plaintiffs application and the diversion of the Court’s resources to address it frustrates that public policy. The reasons underlying this conclusion are the following.
The expansive language of the arbitration clause itself was unambiguous.
The principles of the limited scope of review by courts of arbitrated decisions have long been part of Massachusetts and federal law as reflected in the earlier cited authorities in this memorandum. The explicit terms of Rule 17 anticipate a party like the MHFA bringing a claim in a representational capacity. Further, the principle that it is for the arbitrator to make decisions of a procedural nature is fundamental to this area of the law. The Plaintiff was necessarily on notice as to the applicable law. If it was not, it should have been.
Finally, the outcome sought by the Plaintiff would be contrary to any rational view as to the fair and efficient disposition of commercial disputes within the Commonwealth’s statutory framework for arbitration. As noted above, the Plaintiff waited almost five years to raise the issue of the MHFA’s standing. The Plaintiff did not articulate any actual or potential divergence of interest as the plaintiff entities between the MHFA and HUD. Nor did it demonstrate how the MHFA, rather than HUD, having been the lead party, affected the presentation of the ultimate merits of the underlying dispute. Thus, if the Court were to accept the Plaintiffs position, the effort and expense of nearly five years of preparation and eleven days of hearings before the arbitrator would be erased. Worse, the matter would then have to be docketed as a new case on the Superior Court’s civil docket, trial preparation would have to begin anew, and the sole change would be the substitution of HUD as the party plaintiff. Such an outcome is inherently unreasonable.
Sanctions pursuant to G.L.c. 231, §6F are, therefore, clearly appropriate.[3]
ORDER
1. The Plaintiffs application for an order vacating the arbitration award is DENIED.
2. The MHFA’s cross-application to affirm the award is ALLOWED.
3. The MHFA’s request for sanctions pursuant to G.L.c. 231, §6F is ALLOWED.
4. Within fourteen days of the entry of this order, the MHFA shall file with the Court an affidavit of its reasonable counsel fees and other costs and expenses incurred in defending against the Plaintiffs application. Such affidavit shall include a detailed breakdown of time expended, tasks performed, expenses incurred and billing rates applied.
5. Within ten days of such filing by the MHFA, the Plaintiff may file with the Court an objection, which objection must specify in detail the grounds on which it challenges the reasonableness of the submitted items.

 Although the Court declines to rest its decision on this ground, the MHFA also asserted issue preclusion as a basis for confirming the arbitration award. Domenech, Hicks and Krockmalnic (“DHK”), one of the two entities comprising the Plaintiff, previously entered into a contract with the MHFA as an Interim Asset Manager for HUD. That project also related to the design and construction of a public housing development. A dispute between the MHFA and DHK arose, which resulted in arbitration and subsequent litigation. The arbitration panel ruled in favor of the MHFA, awarding the MHFA damages. Subsequently, the MHFA filed an action against DHK to recover the attorneys fees it had expended. MHFA moved for judgment on the pleadings on the issue of DHK’s obligation to indemnify MHFA for attorneys fees under the contract, and DHK filed a cross motion for partial summary judgment based on the fact that HUD, not the MHFA, had paid the attorneys fees at issue. The court ruled:
[T]he undisputed facts establish that MHFA is a real party in interest pursuant to Rule 17(a). MHFA entered a contract with DHK acting as interim asset manager for HUD and thus acted at all times as an agent of HUD. MHFA has been authorized by HUD to pursue this action for them
Massachusetts Housing Finance Agency v. Domenech, Hicks & Krockmalnic Architect, Suffolk Superior Court Civil Action *399 No. 07-1320-D (Decisions of the Court on Pending Motions, dated February 6, 2009) (Cratsley, J.). Thus, this Court’s conclusion is consistent with that of another Superior Court justice in a case where the underlying transaction appears to have been similar in all material respects.

The Court was unable to find an SJC, Appeals Court or federal court decision that directly addressed the circumstance presented by the Plaintiffs application. However, the Supreme Court of West Virginia decided a case substantially similar. Housing Auth. of the City of Bluefield v. E.T. Boggess, Inc., 160 W.Va. 303, 305 (1977). The West Virginia Supreme Court reversed the order of the trial court, which had held that HUD was a necessary party in a suit brought by the local housing authority alleging negligence by its architect in connection with services provided on a public housing project. Id. at 305. The court noted that local housing authorities are viable legal entities for the purpose of suing and being sued. Id. at 308 (stating that the U.S. Supreme Court when faced with an analogous issue “proceeded on the implicit premise that the Housing Authority was endowed with characteristics rendering it something considerably greater than a mere conduit in effecting HUD’s goals!.],” citing Thorpe v. Housing Auth. of the City of Durham, 393 U.S. 268, 278 (1969)).
The West Virginia court also noted the frequency with which state agency contracts are subject to approval by federal authorities. Id. at 308. The court went on to reason that “(t]he elements of federal financing, supervision and control are not sufficient to strip the contracting parties of their rights and obligations under their contracts . . . These elements do not relegate local authorities to mere ‘agents’ of the United States nor transform local projects into federal projects.” Id. at 309 (citing various federal court authorities).

The Court’s decision to award sanctions here is not inconsistent with the Appeals Court’s decision in Town of Watertown v. Watertown Municipal Employees Ass’n., 63 Mass.App.Ct. 285, 294 n.8 (2005). That is because the Plaintiffs application is not a challenge to an “award" but rather a challenge to the underlying arbitrabiliiy of the dispute. The latter is logically encompassed within the G.L. 231, §6F regime in light of the established public policy promoting arbitration.